LATHAM & WATKINS LLP
Jennifer L. Barry (Bar No. 228066)
*jennifer.barry@lw.com*
Patrick C. Justman (Bar No. 281324)
*patrick.justman@lw.com*
Melanie J. Grindle (Bar No. 311047)
*melanie.grindle@lw.com*
Adam A. Herrera (Bar No. 328043)
*adam.herrera@lw.com*
12670 High Bluff Drive
San Diego, CA 92130
858.523.5400 / 858.523.5450 Fax

LATHAM & WATKINS LLP
Brett M. Sandford (Bar No. 302072)
*brett.sandford@lw.com*
Amit Makker (Bar No. 280747)
*amit.makker@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
415.391.0600 / 415.395.8095 Fax

LATHAM & WATKINS LLP
Jeffrey G. Homrig (Bar No. 215890)
*jeff.homrig@lw.com*
140 Scott Drive
Menlo Park, CA 94025
650.328.4600 / 650.463.2600 Fax

*Attorneys for Defendant Perplexity AI, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**OAKLAND DIVISION**

| | |
|---|---|
| COMET ML INC.,<br><br>Plaintiff,<br><br>v.<br><br>PERPLEXITY AI, INC.,<br><br>Defendant. | CASE NO. 4:25-cv-04088-YGR<br><br>**DEFENDANT PERPLEXITY AI, INC.'S SUPPLEMENTAL BRIEF IN OPPOSITION TO COMET ML INC.'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>Judge: Hon. Yvonne Gonzalez Rogers |

## I. INTRODUCTION

The evidence presented at the June 25, 2025 evidentiary hearing confirmed that at least three fundamental flaws in Comet ML Inc.'s ("CML") case warrant denying its motion for a preliminary injunction. First, the evidence shows that CML's platform and Perplexity's browser do not overlap, despite CML's vague claims that both are in the general field of AI. Second, the evidence shows that, in an attempt to create overlap, CML improperly conflates Perplexity's Comet browser with its answer engine (offered under the Perplexity name)—a separate product not at issue in this case. Third, no record evidence suggests that Perplexity will expand to use the name Comet beyond its browser. CML's CEO's mere speculation cannot substitute for evidence. These flaws are fatal to CML's motion.

The case law that the Court requested at the June 25 hearing confirms that CML's motion fails. First, courts routinely hold "that the mere fact that two products or services fall within the same ***general*** field … does ***not*** mean that [they] are sufficiently similar to create a likelihood of confusion." *See, e.g.*, *Matrix Motor Co. v. Toyota Jidosha Kabushiki Kaisha*, 290 F. Supp. 2d 1083, 1092 (C.D. Cal. 2003).[1] Second, courts reject attempts to bring "evidence of [a defendant's] products that did not bear the [challenged] mark" into the ambit of the *Sleekcraft* analysis because "such evidence [i]s not relevant." *See, e.g.*, *M2 Software, Inc. v. Madacy Ent.*, 421 F.3d 1073, 1088 (9th Cir. 2005). Third, it is well established that a plaintiff's "mere speculation" and general "interest" in expanding its product line is "not evidence" and is legally insufficient to establish the ***strong*** possibility of expansion necessary to support a likelihood of confusion. *See, e.g.*, *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 634 (9th Cir. 2005); *see also M2 Software*, 421 F.3d at 1085 (requiring "a *strong* possibility of expansion into competing markets for this factor to weigh in favor of a finding of infringement" (cleaned up; emphasis original)).

Accordingly, CML cannot meet its high burden to establish entitlement to the extraordinary remedy of a preliminary injunction, and the Court should therefore deny its motion. However, should the Court be inclined to grant some preliminary injunctive relief, Perplexity alternatively

---

[1] Unless otherwise noted, all emphasis is added, and all internal quotes and citations are omitted. "Ex. A" refers to Exhibit A to the supporting Declaration of Jennifer L. Barry.

requests that the Court enter the proposed PI appended to this brief as Attachment 1.

## II. ARGUMENT

### A. CML Fails To Show That The Parties' Goods And Services Are Related

#### 1. A General Relationship Between Offerings Is Legally Insufficient

On the proximity *Sleekcraft* factor, courts in this Circuit have repeatedly held that "the mere fact that two products or services fall within the same general field . . . does ***not*** mean that the two products or services are sufficiently similar to create a likelihood of confusion." *Matrix Motor*, 290 F. Supp. 2d at 1092 ("race cars" and "passenger cars" not sufficiently similar); *see also, e.g.*, *Collins v. U.S. Dep't of Veterans Affs.*, 497 F. Supp. 3d 885, 898 (S.D. Cal. 2020) ("[B]ecause the services provided using the marks are distinct in function and are intended for different classes of users, this factor favors Defendant."). Thus, courts routinely find this factor favors the defendant where the products' purported overlap amounts to no more than a "superficial," "general," "broad," or "abstract[]" relationship. *See, e.g.*, *Instant Media, Inc. v. Microsoft Corp.*, No. 07-cv-02639-SBA, 2007 WL 2318948, at *12 (N.D. Cal. Aug. 13, 2007) ("superficial" relationship not enough for I'M and i'm marks); *Harlem Wizards Entm't Basketball, Inc. v. NBA Props., Inc.*, 952 F. Supp. 1084, 1095 (D.N.J. 1997) ("general" relationship not enough); *Sand Hill Advisors, LLC v. Sand Hill Advisors, LLC*, 680 F. Supp. 2d 1107, 1119 (N.D. Cal. 2010) (relationship "in a broad sense" to "real estate" not enough for "Sand Hill Advisors" marks); *Mach. Head v. Dewey Glob. Holdings Inc.*, No. 99-cv-04326-CW, 2001 WL 1747180, at *6 (N.D. Cal. Dec. 13, 2001) ("broad[]" relationship not enough for "Machine Head" marks); *Kiva Health Brands LLC v. Kiva Brands Inc.*, 402 F. Supp. 3d 877, 893 (N.D. Cal. 2019) (relatedness at "a high [] level of abstraction" as being food products not enough for "KIVA" marks).

For example, in *Pinterest, Inc. v. Pintrips, Inc.*, the plaintiff (Pinterest) argued that the parties' offerings were related because both provided "collaborative products that allow[ed] consumers to plan travel using the Internet" and "pin" travel-related information. 140 F. Supp. 3d 997, 1011 (N.D. Cal. 2015). Although it could be used to "research travel destinations," the court found Pinterest's platform not similar to defendant Pintrips' "online tool that track[ed] fluctuating airline prices by providing users the ability to save flight itineraries from multiple airline websites

to a single location." *Id.* at 1012. The court noted that Pintrips did not offer users any means to "research their travel destinations," and travel was just "one of the dozens" of subject matters that users could research on Pinterest. *Id.* The court further explained that, although "Pinterest users undoubtedly use the service to research their travel destinations," that does "not render Pinterest's social media service similar to Pintrips' airline itinerary-tracking tool." *Id.*

Likewise, the *Instant Media* court considered whether plaintiff Instant Media's "platform for delivering high-definition videos to consumers" was similar to defendant Microsoft's "instant messaging program." 2007 WL 2318948, at *11. The court recognized these internet applications overlapped in "functionality in that Microsoft's [Windows Live Messenger ('WLM')] provide[d] video capability, which [was] the core function of Instant Media's software," but concluded that WLM was "fundamentally an instant messaging program" because, unlike Instant Media's video player software, it did not "enable users to broadcast video or audio programs over the Internet," "support a subscription service," or "provide any retailing services." *Id.* at *11-12. Ultimately, although both products were "both freely downloadable software," "offered over the Internet," and "ha[d] some video capability," the court held that these similarities were "superficial" and "far overshadowed by significant and fundamental differences in functionality." *Id.* at *12; *see also, e.g.*, *Bragi GmbH v. OnePlus Tech. (Shenzhen) Co.*, No. 18-cv-2972-SBA, 2019 WL 7212320, at *5 (N.D. Cal. Jan. 11, 2019) (parties' charger products were "not so closely related as to cause consumer confusion" where they were not cross-compatible and differed in "overall function"); *Hanginout, Inc. v. Google, Inc.*, 54 F. Supp. 3d 1109, 1126 (S.D. Cal. 2014) (insufficient proximity where "Hangouts" provided real-time communication capabilities, including video, whereas "Hanginout" offered a platform for sharing pre-recorded messages).

Decisions from other circuits are in accord. For instance, in *Checkpoint Sys., Inc. v. Check Point Software Techs., Inc.*, the Third Circuit upheld a district court's finding that two parties operating in the "business of corporate security" had dissimilar offerings. 269 F.3d 270, 286-88 (3d Cir. 2001). The Third Circuit concluded the parties' products served "different functions" because one protected "physical article surveillance or personal access" whereas the other protected against "accessing information from unsecure computer lines." *Id.* at 288. In *Amstar*

*Corp. v. Domino's Pizza*, the Fifth Circuit found "marked dissimilarities" between the defendant's pizza and plaintiff's sugar, salt, mustard, ketchup and other condiments. 615 F.2d 252, 261, 264 (5th Cir. 1980) ("About the only things they have in common are that they are edible.").

The same result follows here. At most, the parties both generally relate to the same broad technological innovation—"AI"—a phrase that CML's own CEO admits is an "umbrella term" that "has meant, over the years, very different things." 6/25 H'rg Tr. (Mendels) at 140:2-141:11. AI is no more of a "single field" than was the internet when it was developed. But even if "AI" could be viewed as a single field, it would be the exact type of "general field" that courts have found is legally insufficient to create a likelihood of confusion. *Matrix*, 290 F. Supp. 2d at 1092; *cf. Allstate Ins. Co. v. Kia Motors Am., Inc.,* No. 16-cv-06108, 2017 WL 6550669, at *13 (C.D. Cal. Dec. 22, 2017) ("Software is pervasive in modern society and finding that products are related simply because they both make use of software would drastically expand the scope of trademark rights."), *aff'd*, 784 F. App'x 507 (9th Cir. 2019). Just like the plaintiff in *Instant Media*, CML's claim that "some overlapping functionality" exists between the CML platform and Perplexity's Comet Browser because both products allegedly facilitate agentic searching is insufficient. 2007 WL 2318948, at *11. That is particularly true because, as the evidence at the hearing uniformly showed, CML's platform itself ***cannot*** perform this functionality. 6/25 H'rg Tr. (Mendels) at 179:4-20. Instead, that functionality comes from a third-party AI provider, such as OpenAI. *Id.* And so, to perform a search on CML's platform, a user must undertake a series of convoluted steps, including either providing their own AI model or contracting with and paying to access a third-party AI provider, then integrating that third-party model into CML's platform via API key. *Id.* (Mendels) at 177:21-179:20; 180:20-183:21; *see also id.* (Ungar) at 243:18-246:18. Even assuming that this separate functionality could properly be ascribed to CML's platform, as in *Instant Media*, the "core function" of both products still differs dramatically: Perplexity's Comet product is a web browser that performs live web searching, whereas CML offers a sophisticated platform where software engineers can manage and track ML experiments and cannot perform live web searching (6/25 H'rg Tr. (Mendels) at 118:10-119:11; *id.* (Ungar) at 234:17-235:2). *See* 2007 WL 2318948, at *11.

### 2. The Proximity Factor Is Less Important Where Customers Exercise A High Degree of Care And The Parties Serve Different Groups

Courts have explained that "[t]he proximity of the goods [] becomes less important where consumers exercise a great deal of care," and even "complementary" products can be dissimilar where they serve "different classes of purchasers." *Great W. Air, LLC v. Cirrus Design Corp.*, 649 F.Supp.3d 965, 979-80 (D. Nev. 2023); *see also Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1150 (9th Cir. 2011) ("the proximity of the goods would become less important if . . . consumers exercise a high degree of care").

For example, the *Great Western Air* court found that a charter airline (Cirrus Aviation) was sufficiently different from a plane manufacturer (Cirrus Aircraft), even where the manufacturer's planes were at times "part of charter fleets." 649 F. Supp. 3d at 972, 979-80. "While on the surface the two companies both offer[ed] a way to fly in a private or semi-private plane," they provided "different experiences to purchasers" and catered to different classes of purchasers. *Id.* at 980. Similarly, in *Collins*, the proximity factor favored the defendant where, "[a]lthough both parties provide[d] veterans with 'housing, job-placement, job-training, and mental health services,' the services associated with the marks at issue were not provided to the same class of people." 497 F. Supp. 3d at 898. And, in *Playmakers, LLC v. ESPN, Inc.*, the proximity factor favored the defendant because, although both parties' services "relate[d] to sports in general," the plaintiff served professional athletes, including football players, whereas the defendant produced a TV series about football players. 297 F. Supp. 2d 1277, 1282 (W.D. Wash. 2003), *aff'd*, 376 F.3d 894 (9th Cir. 2004). The Ninth Circuit affirmed the *Playmakers* court's decision denying a PI, likewise citing to the "the remoteness of the parties' lines of business." 376 F.3d at 897.

Here, as in the cases above, CML serves a highly sophisticated audience and primarily targets enterprise customers that pay significant amounts to license CML's platform. *See* 6/25 [Sealed] H'rg Tr. (Mendels) at 210-213 (discussing CML's enterprise pricing); 6/25 H'rg Tr. (Mendels) at 207:3-20 (discussing CML's customer base); Ex. A (Mendels Dep. Tr.) at 201:8-11, 291:8-15; *see also* PX-7; 6/25 H'rg Tr. (Mendels) at 205:8-207:2; Dkt. 31-14 at 2. That is confirmed by the marketing on CML's own website (including the home page and customer

success stories) and its CEO's LinkedIn page, which touts that the platform is "trusted" by ML developers and intended for data scientists, software developers, and others with technical backgrounds. PX-5; DX-15; DX-16; 6/25 H'rg Tr. (Mendels) at 156:18-157:8; 145:6-146:2; 152:5-16; *id.* (Ungar) at 232:13-235:2; 239:20-25. In stark contrast, Perplexity's Comet browser is provided for free to the general public. 6/25 H'rg Tr. (Yarats) at 106:25-107:6; *compare, e.g.*, *Casa Tradicion S.A. de C.V. v. Casa Azul Spirits, LLC*, No. 22-cv-2972, 2022 WL 17811396, at *8 (S.D. Tex. Dec. 19, 2022) (finding defendant's tequila soda and plaintiff's tequila dissimilar where, among other things, plaintiff's tequila was sold for a "high price").[2] As in *Collins*, CML uses its mark primarily for a system that general internet users do not interact with, while Perplexity's Comet browser is designed to be used by and caters to general internet users who want to browse the World Wide Web. *Collins*, 496 F. Supp. 3d at 898 (proximity factor favored defendant where plaintiff worked with veterans directly, while defendant provided a database that veterans did not directly interact with). And, as in *Matrix*, CML offers a high price product to ML development "experts," while Perplexity's browser is targeted to the general public. *Matrix Motor*, 290 F. Supp. 2d at 1092 (proximity factor favored defendant where plaintiff offered expensive, custom-made race cars and defendant sold "inexpensive passenger cars"). These cases confirm that the relatedness factor favors Perplexity.

### 3. CML's Reliance on Perplexity's Answer Engine Is Misplaced

Unable to show any meaningful overlap between its platform and the Comet browser, CML spent considerable time at the hearing focusing on Perplexity's answer engine—not the Comet browser. *See, e.g.*, PX-60, PX-64, PX-65, PX-68, PX-71; 6/25 H'rg Tr. (Yarats) at 33:3-24, 35:3-21, 38:3-39:21, 53:14-24, 54:17. CML's misdirection fails because Perplexity's answer engine is ***not*** the Comet Browser—it is a separate Perplexity product that indisputably does not utilize the

[2] While CML argues that there is market overlap because Perplexity's Comet browser targets the entire general public, that "misses the point" since "the nature of the human experience is that we contain multitudes." *Punchbowl, Inc. v. AJ Press, LLC*, No. 2:21-cv-03010, 2024 WL 4005220, at *8 (C.D. Cal. Aug. 22, 2024). In other words, "the parties' services appeal to different types of consumers acting as agents of consumption in different contexts." *Id.* ("The relevant inquiry is not whether there is any overlap between those individuals who want to use an online platform to invite their children's friends to a birthday party and those who want to stay informed on the latest wheeling-and-dealing happening in the Senate Finance Committee").

"Comet" mark.[3] It therefore cannot support a likelihood of confusion as a matter of law.

The relevant inquiry for the proximity factor considers "the proximity or relatedness of the good or services represented ***by the potentially infringing mark***." *Sand Hill Advisors*, 680 F. Supp. 2d at 1119. Accordingly, courts reject attempts to establish confusion by conflating challenged and unrelated products, as CML does here. The Ninth Circuit's decision in *M2 Software* is instructive. There, the Ninth Circuit affirmed exclusion of "evidence of [defendant's] products that did not bear the M2 mark because such evidence was not relevant to the *Sleekcraft* likelihood of expansion factor." 421 F. 3d at 1088.

Similarly, in *Reeves v. General Nutrition Centers, Inc.*, the Court limited its proximity of goods analysis to "the products or services ***sold under the marks at issue***." No. 10-cv-01653, 2012 WL 13018362, at *4 (C.D. Cal. Apr. 2, 2012). The plaintiff, who owned the GRAMSLAM mark for diet products, accused the defendant's PRO PERFORMANCE 50 GRAM SLAM of infringement. *Id.* at *2. The court recognized that the defendant sold a wide variety of nutritional products, including diet products, but only considered the goods sold under the challenged marks. *Id.* at *4; *see also, e.g.*, *Hanginout*, 54 F. Supp. 3d at 1126 (only considering products under the marks at issue); *Stanley Home Prods. v. Aqualana Corp. of Am.*, 156 USPQ 587, 589 (TTAB 1967) ("That opposer deals in certain goods ostensibly related to the goods of applicant but sold under marks different from that upon which opposer relies herein is ***immaterial and irrelevant***."). The Court should similarly decline CML's invitation to consider features of products not at issue—such as the Perplexity answer engine, the Sonar LLM model, Perplexity Labs, PPLX-API, Perplexity Playground, and Perplexity Enterprise Pro—and, instead, focus its analysis solely on the only product offered under the COMET mark: the Comet browser.

### B. CML's Speculation Cannot Show A Likelihood Of Expansion

For the likelihood of expansion factor to support a finding of likely confusion, there must be "a ***strong*** possibility of expansion into competing markets." *M2 Software*, 421 F.3d at 1085 (emphasis original). To make this showing, CML must present "specific" and "concrete"

[3] The mere fact that Perplexity's answer engine can be accessed through the internet does not somehow render it one and the same with the Comet Browser. *Compare* DX-58.012 *with* DX-36.001; *see also perplexity.ai*; 6/25 H'rg Tr. (Mendels) at 198:22-199:13; DX-73.

evidence, not "mere speculation." *Surfvivor Media*, 406 F.3d at 634 (factor favored defendant where plaintiff only "expressed interest in expanding his product line" and did not "adduce any concrete evidence of expansion plans"); *accord Safeworks, LLC v. Spydercrane.com, LLC*, No. 08-cv-0922, 2009 WL 4730821, at *11 (W.D. Wash. Dec. 7, 2009) ("A plaintiff must offer proof beyond mere speculation or generalized expansion goals"); *see, e.g.*, *Bragi*, 2019 WL 7212320, at *8 (factor favored defendant where plaintiff offered only a "mere suggestion that the parties may in the future compete more directly").

This Court's decision in *Equinox Hotel Management, Inc. v. Equinox Holdings, Inc.* is instructive. There, the plaintiff argued that the defendant's use of the EQUINOX mark for a hotel chain would infringe its EQUINOX mark, used in connection with hotel management services. No. 17-cv-06393-YGR, 2018 WL 659105, *1-3 (N.D. Cal. Feb. 1, 2018). This Court rejected that argument, explaining that the "plaintiff's alleged interest in developing an Equinox-branded hotel [was] insufficient to show that it plans to market an Equinox-branded hotel directly to consumers." *Id.* at *6. Because the plaintiff failed to offer any "concrete evidence of expansion plans," this Court found the likelihood-of-expansion factor favored the defendant and ultimately denied the plaintiff's motion for a preliminary injunction. *Id.* at *9.

Similarly, in *Pinterest*, the plaintiff offered evidence that its executives "discussed" expanding into travel booking (the field the defendant offered), but had not "specifically set a date when [they] would start working on something like that." 140 F. Supp. 3d at 1022. As a result, the court held that Pinterest failed to offer "persuasive evidence that could tilt this factor in its favor." *Id.* Even if Pinterest "aspire[d] to provide a tool similar to Pintrips' service at some unknown point in the future," it had "no travel booking function," was "not working on a travel booking function," and had "no concrete plan to begin working on a travel booking function in the future." *Id.* at 1012, 1022. Pinterest's failure to present any concrete evidence of expansion plans fell "well short of the strong possibility of expansion a plaintiff is required to demonstrate in order for this factor to weigh in favor of a finding of confusion." *Id.* at 1022.

Likewise, in *Oculu, LLC v. Oculus VR, Inc.*, the court found the likelihood of expansion factor favored the defendant despite plaintiff's claim that the parties were "head[ed]" in the same

direction. No. 14-cv-0196, 2015 WL 3619204, at *16 (C.D. Cal. June 8, 2015). There, the plaintiff offered services that "help[ed] businesses display videos on the Internet, which end users [could] view using their computers or mobile devices," and defendant sold virtual reality ("VR") headsets and produced video content that could be viewed using VR technology. *Id.* at *14-15. The plaintiff argued that, "despite the fact that [the] [d]efendant's current focus [was] developing VR hardware, firmware, and software and [the] [p]laintiff's current focus [was] delivering streaming video through computers and mobile devices, both parties are heading toward delivering video content and advertising through VR devices." *Id.* at *16. The court inferred that the plaintiff was "in the early stages of working toward developing a video player that [would] play videos on VR devices," and that consumers would "eventually be able to view videos, including web-based videos, through [the defendant's] VR devices." *Id.* But even with those inferences, the court could not conclude there was a "strong" possibility the parties would compete in the future, and found that likelihood of expansion weighed against the plaintiff, given that "it [was] unclear what products and services [the] [d]efendant [would] offer in the course of developing that VR ecosystem." *Id.*

Just like the plaintiffs in *Equinox*, *Pinterest*, and *Oculu*, CML offers only speculation that it may expand. At the hearing, CML's CEO and only witness confirmed the company has no concrete plans to add agentic searching to its platform, and could not provide even an approximate timeline of when CML may add such capabilities. 6/25 H'rg Tr. (Mendels) at 185:24-186:23. That is unsurprising because CML's platform is not (and has never been) a web browser, and serves a very distinct purpose for a very different market. *Id.* at 138:13-139:18, 162:9-21. While Mr. Mendels claims that this functionality "*could*" be released by the end this year, he testified that he was not aware of any plans to do so, nor was he aware of the "entire product road map" at "that level of detail." *Id.* at 185:24-186:23. With no "concrete plan[s]," no set timeline, and only—at most—"mere expressed interest" in expansion, CML cannot show the requisite "strong possibility" of expansion for this factor to favor it. *Pinterest*, 140 F. Supp. 3d at 1022.

CML's claim that the AI space is fast-moving and Perplexity is an innovative company fails for the same reasons. *Compare M2 Software*, 421 F.3d at 1085 (rejecting plaintiff's argument that likelihood of expansion factor should favor it "because it began to broaden marketing of its

'interactive content' on the internet"). Nor is it Perplexity's burden to *disprove* a likelihood of expansion. *See Pinterest*, 140 F. Supp. 3d at 1022 ("A ***plaintiff must offer proof*** beyond mere speculation or generalized expansion goals."). Nevertheless, Perplexity's CTO testified that Perplexity "ha[sn't] had any plans to use [the name COMET] outside of the browser." 6/25 H'rg Tr. (Yarats) at 67:7-69:2; *see also* Dkt. 32 at ¶ 8. That further negates CML's speculation and confirms that this factor favors Perplexity. *See, e.g.*, *Amarte USA Holdings, Inc. v. Kendo Holdings Inc.*, No. 22-cv-08958-CRB, 2024 WL 4093910, at *12 (N.D. Cal. Sept. 4, 2024) (plaintiff did not meet burden where defendants explained "that they ha[d] no intention to use the [trademark] on any future product"). Mr. Mendels' speculation that Perplexity ***may*** use the Comet mark for products beyond the browser is unsupported by the evidence and legally insufficient to sustain CML's burden to show a likelihood of expansion. *See, e.g.*, *Pinterest*, 140 F. Supp. 3d at 1022 ("plaintiff must offer proof beyond mere speculation or generalized expansion goals"); *Equinox*, 2018 WL 659105, at *9 (no likelihood of expansion without "concrete evidence"); *Great W. Air*, 649 F. Supp. 3d at 987 (factor favored defendant where plaintiff offered no "concrete plans of expanding," and only expressed interest in expansion).

* * *

Perplexity respectfully submits that there is no competent record evidence supporting that Perplexity may use the Comet name in connection with any product other than its browser. And because CML fails to establish that the *Sleekcraft* factors show a likelihood of confusion, its motion should be denied in its entirety. Nevertheless, to the extent that the Court is inclined to grant relief on the basis of concerns that Perplexity might expand use of the Comet name beyond its browser, Perplexity has prepared a proposed preliminary injunction order designed to ameliorate that concern, while accounting for the lack of competition between CML's ML evaluation tool and Perplexity's internet browser. *See* Attachment 1.

## III. CONCLUSION

Perplexity respectfully requests that CML's PI motion be denied. Alternatively, if the Court is inclined to grant CML preliminary injunctive relief, Perplexity requests that the Court enter the proposed PI appended as Attachment 1 to this supplemental brief.

Dated: June 27, 2025

Respectfully submitted,

LATHAM & WATKINS LLP

/s/ *Jennifer L. Barry*

Jennifer L. Barry (Bar No. 228066)
*jennifer.barry@lw.com*
Patrick C. Justman (Bar No. 281324)
*patrick.justman@lw.com*
Melanie J. Grindle (Bar No. 311047)
*melanie.grindle@lw.com*
Adam A. Herrera (Bar No. 328043)
*adam.herrera@lw.com*
12670 High Bluff Drive
San Diego, CA 92130
858.523.5400 / 858.523.5450 Fax

LATHAM & WATKINS LLP
Brett M. Sandford (Bar No. 302072)
*brett.sandford@lw.com*
Amit Makker (Bar No. 280747)
*amit.makker@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
415.391.0600 / 415.395.8095 Fax

LATHAM & WATKINS LLP
Jeffrey G. Homrig (Bar No. 215890)
*jeff.homrig@lw.com*
140 Scott Drive
Menlo Park, CA 94025
650.328.4600 / 650.463.2600 Fax

*Attorneys for Defendant*
*Perplexity AI, Inc.*